IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEVEN KENNEBECK, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13cv88 |
| ) | |
| JANET NAPOLITANO, ) | |
| Secretary of Homeland Security, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

In this Title VII,[1] Age Discrimination in Employment Act ("ADEA"),[2] and Whistleblower Protect Act ("WPA")[3] retaliation case, plaintiff, a former federal employee, alleges that he was unlawfully terminated in retaliation for his participation in a Department of Homeland Security ("DHS") Office of the Inspector General ("OIG") investigation. Defendant now seeks threshold dismissal of plaintiff's claims, arguing (i) that plaintiff has not administratively exhausted the WPA claim and (ii) that the WPA does not provide a remedy for unlawful retaliation for reporting workplace discrimination and hence fails to state a claim upon which relief can be granted. In addition, defendant seeks summary judgment on the Title VII and ADEA retaliation claims, arguing that plaintiff cannot show, as required, that his participation in the OIG investigation was the cause of his termination. Plaintiff opposes these motions, arguing (i) that he administratively exhausted the WPA claim, (ii) that the WPA protects against retaliation for reporting federal workplace discrimination, and (iii) that the

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] 29 U.S.C. §§ 621–34.

[3] 5 U.S.C. § 2302(b)(8).

– 1 –

motion for summary judgment is premature, as discovery had not yet been completed on the issue of causation.

For the reasons that follow, (i) the WPA claim, although administratively exhausted, must be dismissed for failure to state a claim, as the WPA does not provide a remedy for retaliation for the reporting of federal workplace discrimination, and (ii) the motion for summary judgment is premature and is appropriately deferred pursuant to Rule 56(d), Fed.R.Civ.P., pending the completion of discovery on the causation issue.

I.[4]

Plaintiff Steven Kennebeck, a resident of New Mexico, brings this Title VII, ADEA, and WPA suit against defendant Janet Napolitano, Secretary of the Department of Homeland Security, headquartered in Washington, D.C. While employed by DHS, Kennebeck worked at the Transportation Security Administration ("TSA"), a division of DHS headquartered in Arlington, Virginia.

On January 8, 2011, the TSA hired Kennebeck as a program manager in the Office of Global Security ("OGS"). Kennebeck was assigned the role of Regional Manager for Africa and the Middle East. As Regional Manager, he was the liaison between the United States and African / Middle Eastern countries on aviation security issues. In this role, he was supervised by Jill Drury, the Director of International Operations.

In June 2011, the TSA Director, John Pistole, received an anonymous letter alleging misconduct and mismanagement in OGS. Based on this letter, the OIG initiated an investigation

---

[4] The facts recited here are derived chiefly from the complaint and from the parties' briefs addressing the motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

into allegations of workplace discrimination, favoritism, and abuse of power. As part of this investigation, the OIG interviewed a number of OGS personnel.[5]

On August 11, 2011, Kennebeck attended a meeting with an OIG investigator regarding employment practices in OGS. This meeting lasted approximately 90 minutes, during which time Kennebeck claims that he described what he perceived to be discriminatory conduct, intimidation, favoritism, and unjustified promotions by senior officials. Following this meeting, Roger Friedt, the director of the OGS Business Management Office, asked Kennebeck for a detailed account of the interview. When Kennebeck refused to describe the interview, Kennebeck alleges that Friedt became visibly angry.

Following the OIG interview, Kennebeck alleges that he was regularly excluded from a number of major meetings, including meetings that focused on his areas of responsibility. Soon thereafter, on September 14, 2011, the TSA terminated Kennebeck's employment. Kennebeck's supervisor, Drury, explained that the termination was due to certain performance issues. Kennebeck argues that this explanation was a pretext for retaliation, as his actual performance was satisfactory and his interim performance evaluations had been consistently positive.

On October 6, 2011, Kennebeck complained to the TSA's Equal Employment Opportunity Office ("EEO Office"), claiming that his termination was motivated by discrimination on the basis of gender and age, as well as retaliation for his participation in the OIG investigation. On January 17, 2012, Kennebeck filed a formal discrimination and retaliation complaint with EEO Office. Kennebeck's complaint described the discrimination and retaliation as follows:

---

[5] It appears from the pleadings that the OIG interviewed 144 OGS personnel, including all managers. This represented approximately 60% of the OGS workforce.

> During my nine months at OGS I suffered disparate treatment based on my sex (male) and age (51) and, especially, retaliation for reporting the disparate employment practices to the OIG inspector in June 2011. It was this discriminatory and retaliatory treatment that was the actual cause of my termination.

On March 8, 2012, the EEO Office accepted the formal complaint. In its letter to Kennebeck accepting his complaint, the EEO Office described Kennebeck's claim for purposes of investigation, as follows:

> Whether Complainant, a Regional Manager, SV-0301-K, at the Transportation Security Administration Headquarters, Office of Global Strategies, Arlington, Virginia, was discriminated against on the bases of sex (male), age (YOB: 1959), reprisal (witness: revealed disparate treatment of OGS staff to OIG investigator), when, on September 15, 2011, he was terminated from his position.

Kennebeck, although provided an opportunity to do so, noted no objection to the EEO Office's characterization of his claim. Soon thereafter, the EEO Office retained an outside investigator to investigate Kennebeck's EEO complaint.

After completing the investigation, the outside investigator concluded that Kennebeck's termination by the OGS was either discriminatory nor retaliatory. On July 19, 2012, the EEO Office sent Kennebeck a copy of the investigation file and gave him the option of either administrative litigation before an administrative law judge or the issuance of a Final Agency Decision. Kennebeck requested a Final Agency Decision and, on October 17, 2012, the DHS Office of Civil Rights and Civil Liberties issued a Final Agency Decision, in which it concluded (i) that Kennebeck could not establish that Drury knew that he had made protected disclosures during his OGI interview, (ii) that Drury had articulated legitimate, non-discriminatory reasons for her decision to terminate Kennebeck's employment, and (iii) that Kennebeck could not demonstrate that Drury's articulated reasons were a pretext for discrimination.

On January 22, 2013, Kennebeck filed the instant suit, now claiming (i) that he was subject to unlawful retaliation in violation of Title VII, the ADEA, and the WPA, and (ii) that his

- 4 -

due process rights were violated by DHS' conclusion that he was still within his trial period at the time of his termination.

## II.

Exhaustion of administrative remedies is a jurisdictional requirement that is appropriately challenged, as here, pursuant to Rule 12(b)(1). A defendant may challenge subject matter jurisdiction either (i) by alleging "that a complaint fails to allege facts upon which subject matter jurisdiction can be based" or (ii) by alleging "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (*quoting Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Where, as here, the "defendant makes a facial challenge to subject matter jurisdiction . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*[6]

Rule 12(b)(6) challenges are governed by a different standard: Dismissal is required where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (internal quotation marks omitted).

---

[6] It is only where "the defendant challenges the factual predicate of subject matter jurisdiction [that] '[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Kerns*, 585 F.3d at 192 (*quoting Adams*, 697 F.2d at 1219).

## III.

The WPA protects "whistle-blowing to 'Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures[.]'" *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011). To establish a WPA claim, a plaintiff must show (i) "that [he] made a protected disclosure under 5 U.S.C. § 2302(b)(8)" and (ii) that he "suffered an adverse personnel action based on [this] disclosure[.]" *Id.* at 381. A protected disclosure is "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 276 (4th Cir. 2001). The second element of a WPA claim "is common to all actions for retaliation, and is in essence a requirement of a causal connection." *Id.*

A plaintiff who claims to have suffered retaliation in violation of the WPA must typically report the claim to the Office of Special Counsel. *See* 5 U.S.C. § 1214(a)(1)(A). Thereafter, the plaintiff "may seek redress from the Merit Systems Protection Board (MSPB), with an appeal, if necessary, to the Court of Appeals for the Federal Circuit." *Gordon v. Gutierrez*, No. 1:06cv861, 2006 WL 3760134, at *4 (E.D.Va. Dec. 14, 2006). Yet, when a plaintiff complains both of violations of the WPA and of Title VII, a so-called mixed case, the plaintiff may file "a complaint with the agency's EEO department or as an appeal to the MSPB[.]" *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995); *Hendrix v. Snow*, 170 Fed. App'x 68, 79 (11th Cir. 2006) ("if the employee raises a 'mixed case claim,' that is, one alleging both WPA and Title VII claims, the employee may seek relief either by filing a complaint with the agency's EEO department, or by appealing directly to the MSPB"); 5 U.S.C. § 7702. Regardless of which route

of redress a plaintiff chooses, the plaintiff must administratively exhaust his remedies prior to bringing suit in a federal court, as "[u]nder no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action directly before it in the first instance." *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002).

## IV.

Analysis here properly begins with administrative exhaustion, as courts lack jurisdiction over WPA claims prior to administrative exhaustion. *See Stella*, 284 F.3d at 142. And because "subject-matter jurisdiction is a necessary prerequisite to any merits decision by a federal court," a federal court "necessarily acts *ultra vires* when it considers the merits of a case over which it lacks subject-matter jurisdiction." *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 480 (4th Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

It is well-settled in the Fourth Circuit that the "touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same[.]" *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 595 (4th Cir. 2012) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)) (internal citations omitted). Thus, "so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Id.* at 594 (internal quotation marks omitted). Accordingly, the Fourth Circuit has found exhaustion "where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,' and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Id.* (quoting *Chisholm*

*v. U.S. Postal Svc.*, 665 F.2d 482, 491 (4th Cir. 1981)) (internal citations omitted). The Fourth Circuit has explained that the purpose of its exhaustion rule is "to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.*

These principles, applied here, compel the conclusion that Kennebeck has administratively exhausted his WPA claim. To begin with, Kennebeck has complained of only a single retaliation, namely his termination allegedly in retaliation for his participation in the OIG investigation. It is clear that Kennebeck complained of this retaliation in his EEO complaint, when he complained of "retaliation for reporting the disparate employment practices to the OIG inspector in June 2011." Deft.'s Mem. in Supp. of Mot. to Dismiss, Exh. K. And, assuming for jurisdictional purposes that Kennebeck's participation in the OIG investigation can give rise to a WPA claim, this alleged retaliation forms the basis of both Kennebeck's Title VII and WPA retaliation claims. Thus, the alleged Title VII and WPA retaliatory actions are not merely reasonably related, but are indeed the same. Accordingly, Kennebeck's EEO complaint sufficiently exhausted his administrative remedies.

DHS opposes this result, arguing that Kennebeck did not exhaust his WPA claim because he did not specifically state in his EEO complaint that he was subject to WPA retaliation in addition to Title VII retaliation. In support of this argument, DHS relies on a Third Circuit case, wherein the Third Circuit explained that "stating a claim for reprisal based on EEO activity alone, without any indication of an intention to state a claim for whistleblowing, does not support a reasonable expectation that the agency would investigate a WPA claim." *Fleeger v. Principi*, 221 Fed. App'x 111, 117 (3d Cir. 2007). Yet, a close reading of *Fleeger* makes clear that it is inapposite to the case at bar. In *Fleeger*, the plaintiff complained to her agency's EEO Office,

alleging that she was retaliated against for filing "complaints in 2001 and [January] 2002 about work conditions [and that in] response [the agency] removed [her] and placed [her] in [an] isolation/file room[.]" *Id.* at 113. It was only in her district court complaint that the plaintiff complained, for the first time, of retaliation in violation of the WPA for emails that she had sent to the White House complaining about agency management. *Id.* at 113. Thus, the facts in *Fleeger* stand in sharp contrast to the facts here because in *Fleeger* the alleged WPA protected activity was factually unrelated to the Title VII protected activity, whereas here, the activity allegedly protected by the WPA is precisely the same activity allegedly protected by Title VII. Accordingly, Kennebeck's EEO complaint placed DHS on notice of the alleged retaliation. Indeed, to impose a requirement that a plaintiff must specifically state that the alleged retaliation was in violation of both the WPA and Title VII when the two claims share the same operative facts could result in 'tripping up' unwary plaintiffs over technicalities, the very result cautioned against by the Fourth Circuit. *See Sydnor*, 681 F.3d at 594. Accordingly, defendant's jurisdictional challenge fails.

V.

Analysis next proceeds to whether Kennebeck has stated a claim for relief under the WPA. The WPA protects whistleblowers from retaliation for making protected disclosures under 5 U.S.C. § 2302(b)(8). *See Bonds*, 629 F.3d at 381. Section 2302(b)(8) defines as protected disclosure as "any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences . . . (i) any violation of any law, rule, or regulation[.]" Despite this broad language, courts have made clear that § 2302(b)(8) must be read in conjunction with the other provisions of § 2302(b), which prohibit retaliation for activities such as reporting discrimination and exercising grievance rights. Thus, in *Spruill v.*

*Merit Systems Protection Board*, the Federal Circuit, in the context of protected activity that fell within § 2302(b)(8) and § 2302(b)(9)(A)[7], cautioned that "to read the scope of § 2302(b)(8) as including activities squarely within 2302(b)(9)(A) would have the effect of reversing this carefully considered Congressional decision [limiting certain remedies to violations of § 2302(b)(8)] . . . and would render § 2302(b)(9)(A) largely irrelevant, if not completely superfluous." 978 F.2d 679, 690–91 (Fed. Cir. 1992). Nor does this result deprive an aggrieved person of a remedy, as "investigative and remedial measures are available . . . through the EEOC." *Id.* at 692. The same principle applies where, as here, a federal employee complains of discrimination or retaliation under Title VII, as that activity is protected by § 2302(b)(1) and § 2302(b)(9), and thus, does not qualify as a protected disclosure under § 2302(b)(8). *See Serrao v. Merit Sys. Protection Bd.*, 95 F.3d 1569, 1575 (Fed. Cir. 1996) ("the filing of a complaint with the Equal Employment Opportunity Commission . . . , in which an employee alleged discriminatory treatment by an agency in violation of Title VII of the Civil Rights of 1964, did not constitute a whistleblowing disclosure within the meaning of section 2302(b)(8), but instead, was a nonwhistleblowing disclosure under section 2302(b)(9)(A)"). Accordingly, the MSPB has repeatedly held that "[a]lleged disclosures that an agency engaged in discrimination and created a hostile work environment in violation of Title VII are covered under 5 U.S.C. § 2302(b)(1) and (b)(9) and are excluded from coverage under § 2302(b)(8)." *McDonnell v. Dep't of Agriculture*, 108 M.S.P.R. 443, 451 (2008).[8] This conclusion is a sound one, as employees reporting

---

[7] 5 U.S.C. § 2302(b)(9)(A) prohibits retaliation for the exercise of appeal, complaint, or grievance rights.

[8] *See also McCorcle v. Dep't of Agriculture*, 98 M.S.P.R. 363, 374 (2005) (same); *Gonzales v. Dep't of Housing and Urban Development*, 64 M.S.P.R. 314, 317–18 (1994) (activity such as filing an EEO complaint, testifying at another employee's EEOC hearing, and assisting someone

workplace discrimination are protected from retaliation by Title VII and to afford those employees additional protection under the WPA would render the Title VII protections superfluous. Indeed, Kennebeck has cited no authority, nor has any been found, that has held that a complaint of discrimination or retaliation under Title VII constitutes a protected disclosure under the WPA. Accordingly, because Kennebeck's allegedly protected disclosure is a report of Title VII discrimination, it is not a protected disclosure under § 2302(b)(8). Thus, Kennebeck has failed to state a claim under the WPA and his WPA claim must therefore be dismissed.

## VI.

Summary judgment "is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (quoting Rule 56(c), Fed.R.Civ.P.). The facts must be construed "in the light most favorable to [the non-movant], and [the court] may not make credibility determinations or weigh the evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). There must "be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). Yet, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5. Thus, if

> a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule [56(d)] affidavit stating

---

in pursuing a complaint "are activities that fall within 5 U.S.C. § 2302(b)(9), and thus do not constitute whistleblowing disclosures protected under [§ 2302(b)(8)]").

"that it could not properly oppose a motion for summary judgment without a chance to conduct discovery."

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Svc. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

Here, Kennebeck has filed such an affidavit, albeit a somewhat anemic one, (i) stating that he needs the opportunity to conduct discovery on the issue of causation and (ii) identifying specific documents in the possession of the DHS that pertain to causation. Accordingly, it is appropriate to defer the motion for summary judgment on the issue of causation until discovery on this issue has been completed.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, VA
July 3, 2013

/s/
T. S. Ellis, III
United States District Judge